# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 8:22-CV-240 |
| Plaintiff, | |
| v. | **VERIFIED CLAIM OF INTEREST IN DEFENDANT PROPERTY** |
| 2020 McLaren 600 LT Spider; | |
| 2022 GMC Sierra-K2600 AT4 4x4; | |
| 2022 GMC Sierra-K2500 AT4 CC 4x4; | |
| $74,743.00 United States Currency; | |
| Farmers NW Life Insurance Policy Number 009138164; | |
| Farmers NW Life Insurance Policy Number 009165409; | |
| Farmers NW Life Insurance Policy Number 006704990V; | |
| Zenith EL Primero Watch; | |
| Hublot Big Bang Watch; | |
| Breitling Navitimer 43mm Watch; | |
| Rolex Daytona Watch 116509 Serial Number 65S626F8 21749; | |
| Rolex Oyster Perpetual Watch Serial Number X64G6926 AF124300X6; | |
| Rolex Oyster Perpetual Watch Serial Number 259G7053 2831-7351-4857; | |
| 18K Yellow Gold Hockey Goalie pendant with diamonds and yellow gold chain; | |
| 18K white gold adjustable chain and four hearts solitaire pendants; | |
| Rolex Oyster Perpetual Watch Serial Number | |

| | |
|---|---|
| X5965319 22244; | ) |
| | ) |
| 18K Yellow Gold Hockey Player pendant with diamonds and gold chain; | ) ) ) |
| 18K White Gold Bull Rider pendant with diamonds and chain; | ) ) ) |
| 18kt White Gold Wide Diamond ring with Sapphires; | ) ) ) |
| 18kt White Gold Ladys Ring with sapphires and diamonds; | ) ) ) |
| Rolex 40MM Oyster Perpetual Daytona White Mop8 Watch Serial Number C3J48934; | ) ) ) ) |
| Astron SS CSHN Brace Watch; | ) ) |
| ¼ ctw DIA 18" station necklace; | ) ) |
| 8.30 ctw DIA 18KW necklace; | ) ) |
| Rolex Oyster Perpetual Watch Serial Number 179E626; | ) ) ) |
| Breitling Aviator 8 Curtis Warhawk Watch; | ) ) |
| Omega Aqua Terra Limited Edition Watch; | ) ) |
| Omega Speedmaster Watch; | ) ) |
| Omega Seamaster Watch; | ) ) |
| Degrisogono Powerbreaker Watch; | ) ) |
| 17756 East Colt Drive, Queen Creek, Arizona; | ) ) ) |
| 980 County Road W, Space 1146, Fremont, Nebraska; | ) ) ) |
| 5605 North 168th Street, Omaha, Nebraska; | ) ) ) |
| 50% Interest in 2203 23rd Street, Columbus, Nebraska, | ) ) ) ) |

    Defendants.    )
                 )
                 )

  COMES NOW Darland Properties, LLC ("Properties") and on its own behalf and on the behalf of those entities for which Properties provided property management services during the relevant period, as further identified below in paragraphs 12 and 13, files this Verified Claim of Interest in the Defendant Property described in the caption of this action. As grounds for this claim, Properties states the following:

  1.  Properties is a Nebraska limited liability company, with a principal office located at 4115 South 133rd Street, Omaha, NE 68137. Properties is a property management company that collects rents and assists its clients in maintaining their properties.

  2.  Brett Cook ("Cook") was an employee of Properties from 2002 up until his death on May 4, 2022. Cook was paid a salary of $60,000, plus commission on lease renewals and new tenant leases, in exchange for his work for Properties and its clients, i.e., collecting rent and assisting in the maintaining of client's properties. In his employment by Properties, Cook was responsible for managing all commercial real estate Properties had under management. As part of those duties, Cook was responsible for hiring vendors to complete repair jobs. Properties' management of the commercial properties was subject to management agreements between Properties and its clients.

  3.  Stenstrom Services, Inc. ("SSI") is wholly owned by Jeff Stenstrom ("Stenstrom") and purports to be a commercial general contractor. Paragraph 13 of the Amended Complaint for Forfeiture in Rem, Aug. 11, 2022, ECF No. 15 (the "Amended Complaint"), filed by the United States of America in this Court on August 11, 2022, states, in part, that

>Beginning in 2015, or earlier, COOK used his position as Vice-President of Properties to direct repair work to SSI. SSI performed no skilled labor, had no employees, and all regular laborers were unskilled. Most of the work SSI performed on behalf of Properties was subcontracted. COOK was the initial point of contact for many of the subcontractors/vendors and directed the subcontractors that all work must be run through SSI. COOK received bids/proposals from subcontractors or was told about them by STENSTROM. COOK reviewed and approved all SSI bids/proposals, reviewed and approved all SSI final invoices, and reviewed and approved all Properties' disbursements to SSI.

4. Midwest Property Maintenance Solutions ("MPMS") was formed by Cook and Brian Cook, Cook's brother. Paragraph 15 of the Amended Complaint states, in part, that

>By November 2019, COOK and STENSTROM ceased directly using SSI on Properties' jobs. MPMS operated in the same manner as SSI but with new ownership. MPMS had performed no skilled labor and its only employees were COOK, Brian Cook, and a former SSI laborer. Most of the work MPMS performed on behalf of Properties was subcontracted. COOK, in his role as Vice-President of Properties, was the initial point of contact for subcontractors, many of which were the same as SSI previously used. COOK received bids/proposals from subcontractors or was told about them by Brian Cook. COOK reviewed and approved all MPMS bids/proposals, reviewed and approved all MPMS final invoices, and reviewed and approved all Properties' disbursements to MPMS. COOK received substantial financial benefit from the operations of MPMS. COOK concealed his financial interest in MPMS and STENSTROM's involvement in MPMS from Properties and Properties' clients.

5. Cook abused the influential and confidential relationship garnered by his position as an employee of Properties to direct repair work for Properties' clients to SSI and MPMS resulting in fraudulently obtained money coming into the possession of Cook, Stenstrom, and Brian Cook. Paragraph 14 of the Amended Complaint states,

>COOK and STENSTROM used SSI to fraudulently obtain monies from Properties' clients by causing SSI to bill for work that was not performed, overbilling for work, and causing SSI's inflated invoices to be submitted to insurance companies to obtain insurance proceeds to which Properties' clients were not entitled. COOK directly received a substantial financial benefit from the fraudulently obtained proceeds and concealed this fact from Properties and its clients. The scheme resulted in a loss of approximately $4,250,000.00, the majority of which directly benefited COOK.

Regarding MPMS paragraph 16 of the Amended Complaint states,

COOK, Brian Cook, and STENSTROM used MPMS to fraudulently obtain monies from Properties' clients by billing for work that had previously been completed by SSI, billing for work that was not performed, billing for warranties it did not provide and were previously paid for by Properties' clients, and overbilling for work that was done. The continued scheme resulted in a loss of not less than $600,000.00, most of which benefitted COOK and Brian Cook.

6.      Cook additionally, "fraudulently obtained monies from Properties' clients by causing Properties' clients to reimburse COOK for personal expenses, causing Properties' clients to pay COOK a fee of approximately $850,000.00 for negotiations with insurance companies, and by requiring [vendors and/or] subcontractors to pay kickbacks [to Cook, SSI and/or MPMS] to obtain work from Properties resulting in an additional loss of not less than $1,100,000.00." (Am. Compl. ¶ 17)

7.      Cook, as an employee of Properties, abused the confidence, influence, and belief he was acting in the best interest of Properties and its clients which was reasonably relied on by Properties and its clients to fraudulently obtain not less than $5,950,000.00.   (Am. Compl. ¶ 18)

8.      According to the United States in Paragraph 18 of the Amended Complaint,

> In total, the scheme(s) identified above resulted in a loss of not less than $5,950,000.00. The proceeds from the scheme(s) were deposited into SSI's, MPMS's, and COOK's bank accounts where the fraudulently obtained funds were commingled with legitimate funds. The funds were then transferred to various bank accounts held in COOK's name, STENSTROM's name, Brian Cook's name, AZ Midwest Properties, LLC, 14334 Industrial Road, LLC and B & B Real Estate, LLC, where they were further commingled with legitimate funds.

Specifically, between Cook and Properties,

> COOK received funds from Properties via ACH payroll deposits via check and the kickbacks from subcontractors via check. The ACH payroll deposits and checks were deposited in COOK's personal bank account held at UMB bank. The deposited funds were then commingled with legitimate funds and used to pay personal expenses, pay personal loans and mortgages, life insurance premiums, and purchase real estate, vehicles, jewelry, watches, and other luxury items.

(Am. Compl. ¶ 29)

9. The United States in paragraphs 19 through 67 of the Amended Complaint traces the fraudulently obtained money used to obtain and acquire the Defendant Properties listed in the caption of this action. Specifically, in paragraph 34, the United States finds approximately $4,399,198.00 of the comingled fraudulent funds were expended in the following ways:

a. Approximately $991,829.00 was paid to Toll Brothers Arizona to pay for the construction of COOK's personal home located at 17756 East Colt Drive, Queen Creek, Arizona;

b. Approximately $345,424.00 was paid to McLaren of Scottsdale for the purchase of a 2020 McLaren 600LT Spider;

c. Approximately $306,615.00 was paid to Scottsdale Ferrari-Maserati for the purchase of a 2017 Ferrari 488 GTB;

d. Approximately $998,434.00 was paid to credit card company JP Morgan Chase;

e. At least $313,000.00 was paid on personal lines of credit held at UMB bank;

f. Premiums on Farmers NW Life Insurance policy 009138164 in the amount of $4,826.60;

g. Premiums on Farmers NW Life Insurance policy 009165409 in the amount of $4,826.60;

h. Premiums on Farmers NW Life Insurance policy 009165409 in the amount of $6,600.00;

i. Permanent improvements made to the property located at 980 County Road W, Space 1146, Fremont, Nebraska in the amount of $150,000.00;

j. Approximately $100,000.00 was paid for the purchase of a 50% interest in the commercial real estate located at 2203 23rd Street, Columbus, Nebraska;

k. $75,000.00 currently held in the B & B Real Estate, LLC's First Westroads Bank account;

l. Approximately $470,000.00 was paid for the purchase of 4859 South 136Street, Omaha, Nebraska;

m. Approximately $80,000.00 was paid for the purchase of a 2022 GMC Sierra-K2600 AT4 4x4 Red VIN#1GT49PEYXNF163905;

n. Approximately $80,000.00 for the purchase of 2022 GMC Sierra-K2500 AT4 CC 4x4 Red VIN#1GT49PEY5NF145456;

o. No less than $103,000.00 was paid to Wells Fargo Home Mortgage related to the purchase of the property located at 19607 Mayberry Street, Omaha, Nebraska;

  p. Approximately $364,807.00 was paid for the purchase of the property located at 20505 York Street, Elkhorn, Nebraska;

  q. Approximately $4,836.00 was paid for the purchase of a Breitling Aviator 8 Curtis Warhawk watch with green dial, green military band Model# A133161AL1X1, Serial# 2989028.

(Am. Compl. ¶ 34)

  10. Per paragraph 58 of the Amended Complaint, Cook purchased $293,000.00 in watches and jewelry using fraudulently obtained money to directly pay for the purchase or pay down the balance on Cook's JP Morgan Chase Credit Card due to the purchase. The watches and jewelry obtained by Cook with the fraudulently obtained money include watches from Omega, a Zenith EL Primero watch Item Number 1ZNTH0007 from Borsheims, a Hublot Big Bang watch Item Number WHBG0129 from Hyde Park Jewelers of Scottsdale, a Breitling Navitimer 43mm watch Item Number WBTG1778 and associated extended warranty plan from Hyde Park Jewelers in Scottsdale, a Rolex Daytona watch 116509 Serial Number 65S626F8 21749, a Rolex Oyster Perpetual watch 124300 Serial Number X64G69626 AF124300X6, and a Rolex Oyster Perpetual watch 124300 Serial Number 259G7053 2831-7351-4857 from Stein Diamonds, a custom 18K Yellow Gold Hockey Goalie pendant with diamonds .54 cttw and 20" yellow gold Franco 5mm chain from L'Amor Jewelers, a custom 18K white gold adjustable chain and four hearts solitaire pendants 1.03 ct HS F/VS1 GIA 14465889, 1.01 ct HS F/VS2 GIA 14913989, 1.50 ct HS D/VS1 GAI 15181577, 1.51 ct HS D/VS1 GIA 15022459 and a Rolex Oyster Perpetual 124300 watch Serial Number X5965319 22244 from L'Amor Jewelers, an 18K yellow gold hockey player pendant with .15 cttw diamonds 20" 5MM Franco Chain from L'amor Jewelers, an 18kt white gold wide diamond ring sq cut diamonds 5.33 emerald cut sapphires 5.74 #13604 from Mark Edward Jewelers, an 18kt white gold ladys ring 5 oval saph 3.00 cts micro diamonds .60 from Mark Edward Jewelers, a Rolex 40MM Oyster Perpetual Daytona White Mop8 watch Item

Number GAAZ003732, Serial Number C3J48934 from Gunderson's Jewelers, an Astron SS CSHN Brace Watch Item Number GEAZ002261 from Gunderson's Jewelers, a ¼ ctw DIA 14KW 18" station necklace Item Number CGAZ002336 from Gunderson's Jewelers, a 8.30 ctw DIA 18KW necklace Item Number 510Z007405 from Gunderson's Jewelers, a Rolex 41mm 904L Oystersteel Swiss-made Rolex Oyster Perpetual watch style number GAAZ003817 Serial Number 179E626 from Gunderson's Jewelers, and a Breitling Aviator 8 Curtis Warhawk watch with green dial, green military band Model# A133161AL1X1, Serial# 2989028 from Rock the Jewelers.

11. The Defendant Properties listed in this action were purchased with money directly traceable, or comingled with directly traceable money, representing a profit or advantage Cook, Stenstrom, David Cook, SSI, and MPMS received due to the fraudulent schemes and Cooks' breach of his fiduciary duty to Properties and its clients.

12. Nine of Properties' clients have entered into agreements with Properties (collectively the "Consenting Clients") authorizing and directing Properties to pursue actions, claims, and legal proceedings to recover fraudulently and unlawfully obtained proceeds from the Estate of Brett A. Cook (the "Cook Estate"), Cook and entities and persons affiliated with Cook (collectively with Cook, the "Cook Entities") in connection with the unlawful activity purportedly conducted in the name of Properties. Currently, the Consenting Clients consist of:

    a. Build & Market, LLC ("B&M") is a Nebraska limited liability company, with a principal office located at 4115 South 133rd Street, Omaha, NE 68137. Properties has provided B&M with property management services since 2002. On July 30, 2022, B&M and Properties entered into the "CONSENT AND AUTHORIZATION OF BUILD & MARKET, LLC" (a true and correct copy is attached hereto as **Exhibit A**).

b. Cornhusker Investment Co., LLC ("CIC") is a Nebraska limited liability company, with a principal office located at 4115 South 133rd Street, Omaha, NE 68137. Properties has provided CIC with property management services since 2002. On July 29, 2022, CIC and Properties entered into the "CONSENT AND AUTHORIZATION OF CORNHUSKER INVESTMENT CO., LLC" (a true and correct copy is attached hereto as **Exhibit B**).

c. Industrial Associates, LLC ("IA") is a Nebraska limited liability company, with a principal office located at 4115 South 133rd Street, Omaha, NE 68137. Properties has provided IA with property management services since 2002. On July 30, 2022, CIC and Properties entered into the "CONSENT AND AUTHORIZATION OF INDUSTRIAL ASSOCIATES, LLC" (a true and correct copy is attached hereto as **Exhibit C**).

d. Industrial One, LLC ("IO") is a Nebraska limited liability company, with a principal office located at 4115 South 133rd Street, Omaha, NE 68137. Properties has provided IA with property management services since 2002. On July 30, 2022, IO and Properties entered into the "CONSENT AND AUTHORIZATION OF INDUSTRIAL ONE, LLC" (a true and correct copy is attached hereto as **Exhibit D**).

e. Omaha Warehouses, LLC ("OW") is a Nebraska limited liability company, with a principal office located at 4115 South 133rd Street,

Omaha, NE 68137. Properties has provided OW with property management services since October 21, 2014. On July 30, 2022, OW and Properties entered into the "CONSENT AND AUTHORIZATION OF OMAHA WAREHOUSES, LLC" (a true and correct copy is attached hereto as **Exhibit E**).

f.  Saybrook, LLC ("Saybrook") is a Nebraska limited liability company, with a principal office located at 4115 South 133rd Street, Omaha, NE 68137. Properties has provided Saybrook with property management services 2002. On August 10, 2022, Saybrook and Properties entered into the "CONSENT AND AUTHORIZATION OF SAYBROOK, LLC" (a true and correct copy is attached hereto as **Exhibit F**).

g.  Rushmore Business Center, LLC ("RBC") is a Nebraska limited liability company, with a principal office located at 4115 South 133rd Street, Omaha, NE 68137. Properties has provided RBC with property management services since March 25, 2003. On August 11, 2022, RBC and Properties entered into the "CONSENT AND AUTHORIZATION OF RUSHMORE BUSINESS CENTER, LLC" (a true and correct copy is attached hereto as **Exhibit G**).

h.  J Street Properties, LLC ("JSP") is a Nebraska limited liability company, with a principal office located at 4115 South 133rd Street, Omaha, NE 68137. Properties provided JSP with property management services from September 15, 2011, until 2020. On August 15, 2022, JSP and Properties

entered into the "CONSENT AND AUTHORIZATION OF GROVER PARTNERSHIP, L.L.C." (a true and correct copy is attached hereto as **Exhibit H**).

i. Storage One, L.L.C. ("SO") is a Nebraska limited liability company, with a principal office located at 4115 South 133rd Street, Omaha, NE 68137. Properties has provided SO with property management services since 2010. On August 25, 2022, SO and Properties entered into the "CONSENT AND AUTHORIZATION OF STORAGE ONE, L.L.C." (a true and correct copy is attached hereto as **Exhibit I**).

13. Properties' relationship with the remaining clients for whom it provided property management services for during the period relevant to this action who have not entered into an agreement with Properties (the "Clients") is nonetheless sufficient for Properties to pursue actions, claims, and legal proceedings to recover fraudulently and unlawfully obtained proceeds from the Cook Estate and the Cook Entities in connection with the unlawful activity purportedly conducted in the name of Properties to protect any interest the Clients may have.

14. Properties, on its own behalf and on behalf of the Consenting Clients and Clients, asserts the rules of equity and good conscience require a constructive trust be imposed on all Defendant Property wrongfully obtained by the nature of the fraudulent scheme and Cook's breach of his fiduciary duty to Properties, the Consenting Clients, and the Clients for the benefit of Properties, the Consenting Clients, and the Clients. The constructive trust should be imposed on, but not be limited to, all Defendant Property subject to forfeiture in the Complaint: 2020 McLaren 600LT Spider; 2022 GMC Sierra-K2600 AT4 4x4; 2022 GMC Sierra-K2500 AT4 CC 4x4; $74,743.00 United States Currency; Farmers NW Life Insurance Policy Number 009138164;

Farmers NW Life Insurance Policy Number 009165409; Farmers NW Life Insurance Policy Number 006704990V; Zenith EL Primero Watch; Hublot Bing Bang Watch; Breitling Navitimer 43mm Watch; Rolex Daytona Watch 116509 Serial Number 65S626F8 21749; Rolex Oyster Perpetual Watch Serial Number X64G6926 AF124300X6; Rolex Oyster Perpetual Watch Serial Number 259G7053 2831-7351-4857; 18K Yellow Gold Hockey Goalie pendant with diamonds and yellow gold chain; 18K white gold adjustable chain and four hearts solitaire pendants; Rolex Oyster Perpetual Watch Serial Number X5965319 22244; 18K Yellow Gold Hockey Player pendant with diamonds and gold chain; 18K White Gold Bull Rider pendant with diamonds and chain; 18kt White Gold Wide Diamond ring with sapphires; 18kt White Gold Ladys Ring with sapphires and diamonds; Rolex 40MM Oyster Perpetual Daytona White Mop8 Watch Serial Number C3J48934; Astron SS CSHN Brace Watch; ¼ ctw DIA 18" station necklace; 8.30 ctw DIA 18KW necklace; Rolex Oyster Perpetual Watch Serial Number 179E626; Breitling Aviator 8 Curtis Warhawk Watch; Omega Aqua Terra Limited Edition Watch; Omega Speedmaster Watch; Omega Seamaster Watch; Degrisogono Powerbreaker Watch; 17756 East Colt Drive, Queen Creek, Arizona; 980 County Road W, Space 1146, Fremont, Nebraska; 4859 South 136 Street, Omaha, Nebraska; 50% Interest in 2203 23rd Street, Columbus, Nebraska.

    15.    Properties, the Consenting Clients, and Clients, as beneficiaries of the constructive trust owning all profits and advantages Cook, Stenstrom, David Cook, SSI, MPMS, and any other of the Cook Entities received due to Cooks' breach of his fiduciary duty to Properties, the Consenting Clients, and Clients, have an ownership interest in all Defendant Property listed in the Complaint. Properties, on its own behalf and on behalf of the Consenting Clients and Clients, hereby asserts all statutory, equitable, and legal defenses available to it, in defense of their property

rights in the Defendant Property and contest the forfeiture of the Defendant Property to the United States.

I attest and declare under penalty of perjury that the information provided in support of Properties' claim is true and correct to the best of my knowledge and belief.

Dated: August 29, 2022.

DARLAND PROPERTIES, LLC

By: _____

Monte E. Matz, Jr., Manager